[No. 7163.    Decided March 19, 1908.]

### BEVERLY R. MASON et al., Respondents, v. MARTIN LONG et al., Appellants.[1]

BOUNDARIES—DESCRIPTION IN DEED—PLATS—SHORTAGE IN BLOCK. The grantees in a deed conveying land in a block by metes and bounds, which description would be coincident with the south half of lot number eleven, in case all the lots were 60 feet in width as stated on the plat, are not entitled to have their title quieted as against owners of the adjoining lot number ten, upon the mere claim that there was a shortage in the length of the block which, if evenly distributed among all the lots, would make the metes and bounds description cover part of lot ten, where there was no definite proof as to the location of the shortage or as to the lots affected thereby.

QUIETING TITLE—DECREE. In an action to quiet title, the plaintiffs are not entitled to any decree where they fail to show any actual conflict between their claims and those of the defendants.

Appeal from a judgment of the superior court for King county, Albertson, J., entered September 14, 1907, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to quiet title. Reversed.

*F. F. Randolph* and *Metcalfe & Jurey,* for appellants.

*Jas. A. Dougan,* for respondents.

HADLEY, C. J.—This is an action to quiet title. The plaintiffs allege that they are the owners in fee simple of a tract of land described as follows: Commencing at a point ninety feet south of the northeast corner of block 6 in

[1]Reported in 94 Pac. 646.

Burke's Second addition to Seattle, running thence south along the east marginal line of said block 6, thirty feet, thence west one hundred and twenty feet to the center line of said block 6, thence north thirty feet, thence east to the point of beginning. The complaint alleges that the land lies in the easterly half of said block 6, and that said half block, according to the recorded plat thereof, counting from the south end of the block, is made up of lots 7, 8, 9, 10, 11, and 12, the dimensions of each of said lots being sixty feet north and south and one hundred and twenty feet east and west. It is also alleged that, although the block appears by the original plat to be three hundred and sixty feet in length, it is in fact but three hundred and forty feet in length; that at one time one Harry White and wife were the owners of lots 10, 11, and 12, and that in order to avoid the shortage of twenty feet in the block, said White conveyed by metes and bounds to one John Booth the northerly ninety feet of the easterly half of the block, and to the plaintiff Beverly R. Mason the thirty feet adjoining thereto on the south as aforesaid; that the said two conveyances transferred from White and wife the northerly one hundred and twenty feet of the easterly half of the block.

According to the plat the property transferred by the two conveyances was identical in extent with lots 11 and 12, that conveyed to plaintiffs being identical with the south thirty feet of lot 11; but the plaintiffs allege that, after said conveyances were made, the only part of said lot 10 remaining to White and wife was the south forty feet thereof, which was by the last-named description conveyed to defendant Martin Long. It is averred that notwithstanding the fact that the conveyance was made to plaintiffs by metes and bounds, yet the county has at all times designated upon the tax records the property owned by plaintiffs as the south half of lot 11 in said block 6, and has demanded of plaintiffs the payment of the taxes thereon; that the plaintiffs have paid all taxes demanded of them, believing at all times that in

so doing they were paying in full upon their property as first above described; that regardless of the fact that the two conveyances aforesaid were made by metes and bounds, and that the south forty feet of lot 10 was conveyed to defendant Long, yet the county has each year erroneously continued to levy taxes against the north twenty feet of lot 10. Allegations are also made to the effect that, for an alleged delinquency in the payment of taxes on the said north twenty feet of lot 10, such proceedings were had that, in due course after foreclosure, one Totten became the purchaser thereof at tax sale, and he afterwards conveyed the same to defendant Mary Long,. the wife of defendant Martin Long; that by reason of the foregoing alleged facts there has been no such description as the north twenty feet of lot 10 assessable for more than sixteen years, and that the defendants Long, by reason of said void tax title, are claiming the ownership and are in possession of a part of plaintiffs' land. The answer of defendants is to the effect that they claim to be the owners of the whole of lot 10; that plaintiffs have no interest in said lot and are entitled to no relief in this action. The cause was tried by the court without a jury, and the court entered a decree quieting the plaintiffs' title to the property as described by their metes and bounds description, and also specifying that the title is quieted as against any claims of the defendants Long by reason of the tax deed aforesaid. The defendants have appealed.

The real question presented by the appeal is whether the respondents have shown themselves to be entitled to any relief. The court in its findings of facts found, and properly so under the pleadings and evidence, that the property conveyed to respondents by their metes and bounds description is, according to the plat, the same as, and is coincident with, the south thirty feet of lot 11 in block 6. If the property conveyed to respondents is confined to the limits of lot 11, there is then no conflict between them and the appellants, for the latter make no claim as against anything in lot 11, their

claim of ownership being confined wholly to lot 10. Respondents' metes and bounds description refers directly to the plat. It begins with reference to the corner of a block in the plat as the initial point, and the measurements show that, from the extent of the block and the size of the lots as shown by the plat, the description must cover the south thirty feet of lot 11 and no other territory. It is true the respondents alleged that, although the plat shows the block to be three hundred and sixty feet in length, yet it is in fact but three hundred and forty feet long. There is, however, neither allegation nor proof as to where the shortage occurs. A witness testified that he measured the block from one corner to the other and found it to be three hundred and forty feet in length. But it is not shown that the shortage is applied to any given lot or lots. If such distance of three hundred and forty feet were evenly divided, as would supposedly be true from the method of platting, then each lot in this half block would be fifty-six feet and eight inches wide, instead of sixty feet. If that were true, then the beginning point of respondents' description, being ninety feet from the northeast corner of the block, would make the description include twenty-three feet and four inches of lot 11, and six feet and eight inches of lot 10. Respondents allege in their complaint that, after White and wife had conveyed the northerly one hundred and twenty feet of the half block by their metes and bounds descriptions, there remained to them but the south forty feet of lot 10. If, however, the lots were all fifty-six feet and eight inches in width, then there was left to White and wife fifty feet in lot 10 instead of forty feet, as contended by respondents. Thus we see that, in the absence of definite proof as to the location of the shortage, respondents are merely speculating as to what lots it affects.

The plat states upon its face that all full lots are sixty by one hundred and twenty feet, and that "fractional lots are as shown on this plat." All the lots in the block mentioned are indicated upon the plat as being sixty feet in

width.  If it be true that the indication upon the plat is an error and that there is in fact one or more fractional lots in the half block, then such fractional lot or lots must be located by definite allegation and proof, and it must appear that respondents metes and bounds description affects lands in such fractional lots before they are entitled to ask relief. Without such a showing it must be held, according to the dimensions shown by the plat, that respondents' land as described lies wholly within lot 11, and that their description does not conflict with appellants' tax title to the north twenty feet of lot 10.  The trial court did not find that there is any actual conflict between the two descriptions, but it entered a decree quieting respondents' title to whatever land is included in their description, and especially decreed that their title to the land so described shall be quieted as against any claim by reason of appellants' tax deed.  Appellants argue that the inference is to be drawn from the decree that respondents' description extends into lot 10 and conflicts with appellants' tax title.  Such is probably true.  If the court's finding that the land included in respondent's description is the same as, and coincident with, the south thirty feet of lot 11, had been expressly carried into the decree by recital, then perhaps such inference would have been negatived upon the face of the decree.  As the decree stands, however, some confusion may arise, and inasmuch as we have seen that respondents have not shown any actual conflict with appellants, we believe they should be denied any decree in the premises.

The judgment is therefore reversed, and the cause remanded with instructions to vacate the decree and enter judgment that respondents shall take nothing by their action.

FULLERTON, CROW, MOUNT, and ROOT, JJ., concur.